UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Cynthia R. Baker, | : | Case No. 3:19-cv-00319 |
| Plaintiff, | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| Commissioner Of The Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Cynthia R. Baker brings this case challenging the Social Security Administration's most recent denial of her applications for disability benefits. This is her second case before this Court concerning the Administration's denial of her applications.

Previously, in March 2012, Plaintiff filed applications for Disability Insurance Benefits, Supplemental Security Income, and for a period of disability benefits. Her applications were denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge (ALJ) George M. Gaffaney concluded she was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review, and she filed a

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

case before this Court, resulting in an Order vacating the Commissioner's non-disability finding and remanding the case for further administrative proceedings.

On remand, ALJ Elizabeth A. Motta held a hearing and ultimately concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council granted Plaintiff's request for review and vacated ALJ Motta's decision for reasons not presently pertinent. (Doc. No. 8-9, PageID 926-27). The Appeals Council conducted its own independent review of the record and concluded that Plaintiff was not eligible for benefits because she was not under a benefits-qualifying "disability." (Doc. No. 8-9, PageID 926-40).

Plaintiff subsequently filed this action. She seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the Appeals Council's non-disability decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 11), Plaintiff's Reply (Doc. No. 12), and the administrative record (Doc. No. 8).

## II.  BACKGROUND

Plaintiff asserts that she has been under a disability since February 23, 2012. At that time, she was forty-seven years old. Accordingly, she was considered a "younger individual" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c).[2] Since that time, Plaintiff attained age 50, so her classification changed to an

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

individual "closely approaching advanced age." *See id.* § 404.1563(d). She has at least a high school education and training as a nurse's aide.

The evidence of the record is sufficiently summarized in the Appeals Council's decision (Doc. No. 8, PageID 925-40), Plaintiff's Statement of Errors (Doc. No. 10), the Commissioner's Memorandum in Opposition (Doc. No. 11), and Plaintiff's Reply (Doc. No. 12). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

### III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). When the Appeals Council reviews the ALJ's decision, the determination of the Appeals Council becomes the final decision and is subject to review by this Court. *Olive v. Comm'r*

*of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the legal criteria—may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

4

## IV. THE APPEALS COUNCIL'S DECISION

As noted previously, the Appeals Council vacated ALJ Motta's decision and conducted its own independent evaluation of the evidence to determine if Plaintiff was under a disability. In doing so, the Appeals Council considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. They reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity after February 23, 2012.

Step 2: Plaintiff has the severe impairments of mild thoracolumbar degenerative changes, obesity, history of ischemic heart disease with stenting, history of abdominal surgeries secondary to endometriosis, hypertension, migraine headaches, depressive disorder, chronic pain disorder, and history of substance use disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's List of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work" subject to many physical, environmental, and mental limitations. The most pertinent of these for present purposes was the Appeals Council's determination that Plaintiff "is limited to performing ***simple, repetitive tasks of a low-stress nature involving no strict production quotas or fast-pace only routine, static work with few changes in the work setting with any such changes explained***."

Step 4: Plaintiff was unable to perform her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc No. 8-9, PageID 925-40 (emphasis added)). These main findings led the Appeals Council to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 939-40.

## V. DISCUSSION

Plaintiff contends that the ALJ and the Appeals Council erred by accepting the opinions of Dr. Melanie Bergsten, Dr. Vicki Warren, Dr. Alan Boerger, and Mr. Carl Newcomer without incorporating into her residual functional capacity all the mental-work limitations these medical sources identified.[3]

Beginning with record-reviewing psychologists Drs. Bergsten and Warren, the Appeals Council placed "significant weight" on their opinions by observing they were "supported by the normal mental status examination findings contained in the record as well as a statement showing that [Plaintiff's] mood symptoms are stable." *Id.* at 937.

Plaintiff contends that the Appeals Council erred by not mentioning or addressing any of the opinions provided by Drs. Bergsten and Warren, including the specific functional limitation that the ALJ expressly adopted. This is incorrect. The Appeals Council correctly observed that Drs. Bergsten and Warren evaluated Plaintiff's mental condition based on their reviews of the records without examining her. (Doc. No. 8-9, PageID 936-37). The Appeals Council noted that each psychologist found that Plaintiff

---

[3] In her Statement of Errors, Plaintiff refers to the deficiencies in the ALJ's decision, rather than the Appeals Council's decision. However, in her Reply, Plaintiff maintains that the Appeals Council committed the same mistakes in evaluating the opinion evidence. Given that the Appeals Council vacated the decision of the ALJ, and issued its own and final decision, the Court will evaluate Plaintiff's claims in light of the Appeals Council's decision. *See Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007).

6

has a severe mental impairment, and each psychologist concluded that she was limited in four mental-work areas as follows:

| Plaintiff's mental-work limitations | Activities of daily living | Maintaining Social Functioning | Concentration, Persistence, and Pace | Repeated Episodes of Decompensation Each of Extended Duration |
|---|---|---|---|---|
| Dr. Bergsten's Opinions | Mild | No Limit | Moderate | None |
| Dr. Warren's Opinions | Mild | Mild | Moderate | None |

Plaintiff asserts that the Appeals Council made the same egregious errors the ALJ made by not incorporating into Plaintiff's residual functional capacity Drs. Bergsten's and Warren's opinions that she is moderately limited in her ability to complete a normal workday and workweek. Plaintiff further argues that the ALJ erred by not engaging in any sort of adequate discussion of these psychologists' opinions.

Both Dr. Bergsten and Dr. Warren completed a Mental Residual Functional Capacity (MRFC) Assessment, which is comprised of multiple sections. (Doc. No. 8-3, PageID 102-04, 134-36). At the outset, the MRFC Assessment states:

> The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s) in the explanation text boxes.

*Id.* This statement is followed by a series of questions that pertain to the four broad functional categories: (1) understand, remember, or apply information, (2) interact with

7

others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. *Id*; *see also* 20 C.F.R. § 404.1520(a)(c)(3).

Dr. Bergsten's and Dr. Warren's opinion about Plaintiff's moderate limitation in her ability to complete a normal workday and week without interruption from psychologically based symptoms is within the functional domain of concentration, persistence, and pace. *See* Doc. No. 8-3, PageID 102-04, 134-36. Although both psychologists found Plaintiff moderately limited in this area, neither articulated greater limitations specific to her ability to complete a normal workweek or workday in their narrative sections that serve as the *actual* mental residual functional capacity assessment, as the MRFC Assessment form explains. *See id*. at 102, 134. Rather, in the narrative sections, Dr. Bergsten explains that Plaintiff "is able sustain concentration and persistence to perform simple and complex tasks that are not fast paced." *Id.* at 103, 135. Dr. Bergsten also narrates that Plaintiff "is able to perform work related tasks in situations where duties are relatively static and changes can be explained." *Id.* at 104. Similarly, Dr. Warren's narratives reflect that Plaintiff "is able to sustain concentration and persistence to perform simple and complex tasks that are not fast paced or require a strict quota," and that she "is able to perform work related tasks in situations where duties are relatively static and changes can be explained." *Id.* at 135-36.

In addition, no error occurred when the Appeals Council did not address each particular opinion Drs. Bergsten and Warren provided; instead, the Appeals Council properly incorporated their narratives into the residual functional capacity assessment. *See Busse v. Comm'r of Soc. Sec.* 2015 U.S. Dist. LEXIS 75907, 2015 WL 3651386, *8 (S.D

8

Ohio June 11, 2015) (Litkovitz, M.J.) (finding that "the ALJ's failure to discuss the state agency psychologists' responses to each individual question is not error as she incorporated their 'actual' RFC assessments in her RFC formulation"). The Appeals Council reduced Plaintiff's ability to concentrate by restricting her to "simple, repetitive tasks" and "only routine, static work with few changes in the work setting." (Doc. No. 8-9, PageID 932). Likewise, the Appeals Council excluded strict production quotas or fast-pace tasks. *Id.* These restrictions align with Dr. Bergsten's and Dr. Warren's opinions, and the narratives they provided. *See* Doc. No. 8-3, PageID 102-04, 134-36). Therefore, substantial evidence supports the Appeals Council reasonable assessment of Plaintiff's mental residual functional capacity. *See Carter v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 998, 1008 (S.D. Ohio 2015) (Newman, M.J.) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("if a medical source's opinion contradicts the [Appeals Council's] RFC finding, [the Appeals Council] must explain why [they] did not include the disabling limitation in the RFC determination").

Plaintiff contends that despite giving some weight to Mr. Newcomer's opinions, the Appeals Council failed to incorporate into her residual functional capacity his opinion that she was moderately limited in her ability to complete a normal workday or week without interruptions from psychologically based symptoms. (Doc. No. 8-8, PageID 915). Mr. Newcomer, however, explained that Plaintiff was moderately limited in this area, "[i]f depression severe enough where crying, she would need break time." *Id.* Mr. Newcomer does not specify what he means by her need for "break time," and his estimate is too general to be meaningfully probative of her limitations in this area. The Appeals Council therefore

9

committed no error by failing to credit this opinion.

Additionally, Plaintiff argues that the residual functional capacity assessment does not accurately reflect her moderate limitation in maintaining regular attendance and punctuality, which is also within the functional domain of concentration, persistence, and pace. (Doc. No. 10, Page ID 1994). Mr. Newcomer indicated that Plaintiff was moderately limited in her ability to maintain regular attendance and be punctual within customary, usually strict, tolerances. (Doc. No. 8-8, PageID 915). He explained that this limitation was "due to physical pain—not depression." *Id*. His opinion, moreover, was inconsistent with Dr. Bergsten's belief that Plaintiff was "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Doc. No. 8-3, PageID 103). Likewise, Dr. Warren indicated that there was "no evidence of limitation" in Plaintiff's ability in this specific mental-work category. *Id.* at 135. For these reasons, the Appeals Council did not err by not finding Plaintiff more limited based on Mr. Newcomer's opinion about Plaintiff's moderate limitation in her ability to maintain regulate attendance and be punctual at work.

Plaintiff also contends that the residual functional capacity assessment does not accurately reflect her moderate limitation in tolerating pressure of the workplace. (Doc. No. 10, PageID 1993-95). Consultative examiner, Dr. Boerger, determined that Plaintiff's "anxiety and depression are likely to limit her ability to tolerate work pressures in a work setting." (Doc. No. 8-7, PageID 601). The Appeals Council afforded his opinion "some weight," and noted that "no greater weight can be given to the opinion that the claimant's depression would likely limit her ability to tolerate work pressures because treating source

10

records give no such indication as to such." (Doc. No. 8-9, PageID 937). This was a valid reason to not fully credit this aspect of Dr. Boerger's opinion because the record does not contain a treating psychologist's opinion about Plaintiffs' mental work limitations. Plaintiff, moreover, appears to overlook that the Appeals Council's assessment of her residual functional capacity included the limitation of Plaintiff to "tasks of a low-stress nature." (Doc. No. 8-9, PageID 932). The Appeals Council further accounted for this limitation by restricting Plaintiff to work that does not involve strict production quotas and to work that is "routine" and "static with few changes." *Id.*

Plaintiff lastly argues that the Appeals Council's errors were not harmless because if it had properly incorporated her mental-work limitations—extra or longer break periods, workplace pressure, absenteeism and punctuality—into her residual functional capacity, "it would have resulted in her impairments being work preclusive as evidenced by the vocational expert at the hearing." (Doc. No. 10, Page ID 1996-97). Plaintiff, however, has not shown that the Appeals Council erred in its assessment of her mental residual functional capacity. Harmless-error analysis therefore does not apply.

In support of this argument, Plaintiff references a follow up question that was posed by the Administrative Law Judge to the vocational expert in the hearing, which was whether an individual being off task "10% of the workday beyond regular breaks" would be work preclusive. (Doc. No. 10, Page ID 1997). It is true that the Administrative Law Judge posed this question to the vocational expert. However, Plaintiff mischaracterizes the vocational expert's testimony. Plaintiff states that the vocational expert testified that being off task 10% of the workday beyond regular breaks would be work preclusive. (Doc. No.

11

10, Page ID 1997). This is incorrect. The vocational expert answered that it "would not eliminate [the referenced] jobs," but that "anything *over* 10% would be work preclusive." (Doc. No. 8-9, PageID 1001). Further, while some of the evidence in the record indicates that Plaintiff may have interruptions and need rest periods, there is no evidence in the record regarding a specific, concrete limitation that she would be off task for 10% of the workday or more. *See Lipanye*, 802 F. App'x at 170 ("By posing the question, the administrative law judge did not make a finding or bind himself to a finding that plaintiff was off-task at least 10% of the workday," and that "[n]othing in the medical record would support inclusion of such a limitation").

Lastly, Plaintiff contends that the question posed by her counsel "incorporated the complete set of limitations opined to throughout the record," and that "the ALJ was able to conveniently omit from her RFC just those limitations that would have been work preclusive." (Doc. No. 10, PageID 1998-99). She maintains that this was prejudicial to her because during the ALJ's hearing, her counsel told the vocational expert to "assume the term moderate would be an inability to function in these areas between 11 and 25 percent of the workday and workweek," and that the hypothetical individual's "impaired areas would be the ability to maintain regular attendance, the ability to complete a normal workday, ability to deal with stress and pressures of day-to-day work activity." (Doc. No. 8-9, PageID 1003). The vocational expert indicated that with those limitations and the term moderate defined as counsel indicated, it would be work preclusive. *Id.*

A similar issue arose in *Shepard v. Colvin*, No. 3:12cv149, 2013 WL 2179366, *13 (S.D. Ohio May 20, 2013) (Ovington, M.J.) Report & Recommendation adopted, 2013 WL

3053533 (S.D. Ohio June 17, 2013) (Rose, J). In *Shepard*, Plaintiff's counsel did not ask the vocational expert what she believed in her expert opinion the term moderate to mean, but "rather, Plaintiff defined 'moderate' for the [vocational expert], then instructed her to use his specific definition in a hypothetical, without any indication such a definition of 'moderate' accurately portrays the term as incorporated into Plaintiff's RFC." *Id.* As in *Shepard*, there is no evidence in the instant record to indicate that the term moderate, as defined by Plaintiff's counsel, accurately portrays the term moderate as used by Drs. Bergsten, Warren, and Boerger, and Mr. Newcomer. Therefore, the Appeals Council did not commit error, let alone prejudicial error, concerning the vocational expert's testimony about work-preclusive moderate limitations.

Accordingly, for all the above reasons, Plaintiff's Statement of Errors is without merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding is affirmed; and

2. The case is terminated on the Court's docket.

February 26, 2021                           */s Sharon L. Ovington*
                                                       Sharon L. Ovington
                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).